MARTHA W. BACON and Others, Appellants, v. The Honorable JULIUS MILLER, President of the Borough of Manhattan, and Another, Respondents.

First Department, November 4, 1927.

Municipal corporations — streets — change of name and renumbering — Park avenue, New York city, commences at Thirty-fourth street and runs north — continuation of Park avenue southerly is known as Fourth avenue — one of plaintiffs owns residence known as number " One Park Avenue " — board of aldermen passed resolution, under Greater New York Charter, § 50, extending Park avenue southerly to Thirty-second street on request of owner of property between Thirty-second and Thirty-fourth streets — number " One Park Avenue " was given to commercial building below Thirty-fourth street — numbers on plaintiffs' property were changed — action of board of aldermen in extending Park avenue southerly was arbitrary and invalid.

The plaintiffs own property on Park avenue in New York city at the beginning thereof at Thirty-fourth street.   Fourth avenue commences at Thirty-fourth street and runs southerly, being a continuation of Park avenue.   The owner of property between Thirty-second and Thirty-fourth streets requested the board of aldermen to pass a resolution, pursuant to section 50 of the Greater New York Charter, to the effect that Park avenue should begin at Thirty-second street and to renumber the street so as to give the owner of the property mentioned number " One Park Avenue."   This number was the number of the residence of one of the plaintiffs and has been such for a great many years. Park avenue is much wider than Fourth avenue and has parks in the center thereof and is essentially a residential street.

The action of the board of aldermen in extending Park avenue two blocks south and in renumbering the avenue so as to assign other numbers to the property of the plaintiffs was arbitrary, unjustified and invalid.

DOWLING, P. J., dissents.

APPEAL by the plaintiffs, Martha W. Bacon and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 31st day of December, 1926, upon the decision of the court rendered after a trial at the New York Special Term, dismissing the complaint against the defendant Miller, as president of the borough of Manhattan, with costs, and providing that an injunction issued

in the proceedings should terminate when defendant Miller should assign the number " One Park Avenue " to the property of the defendant One Park Avenue Corporation.

*Edwin De T. Bechtel* of counsel [*A. Delafield Smith* with him on the brief; *Carter, Ledyard & Milburn,* attorneys], for the appellants.

*Elliot S. Benedict* of counsel [*J. Joseph Lilly* and *Russell Lord Tarbox* with him on the brief; *George P. Nicholson, Corporation Counsel*], for the respondent Miller.

*Martin Conboy* of counsel [*David Asch* with him on the brief; *Griggs, Baldwin & Baldwin,* attorneys], for the respondent One Park Avenue Corporation.

MARTIN, J. By this action it is sought to have a resolution adopted by the board of aldermen of the city of New York declared invalid and certain proceedings thereunder enjoined. It purports to change the name of the two blocks on Fourth avenue, borough of Manhattan, between Thirty-second and Thirty-fourth streets, to " Park Avenue," and to direct the borough president to renumber the buildings on the " newly added portion of Park Avenue."

The change was made at the request of Mr. Henry Mandel as shown in a letter sent by him to the president of the board of aldermen.

The resolution directing the change was adopted on April 22, 1924, and provides as follows:

" *Resolved,* that, so much of Fourth Avenue as extends from 32d Street to 34th Street, in the Borough of Manhattan, be and the same hereby is changed to, made part of and shall hereafter be known and designated as ' Park Avenue,' and the President of the Borough is authorized and requested to number or re-number the buildings on the newly added portion of Park Avenue in such manner and to such extent as may be deemed necessary and to note the changes on the maps and records of his office."

Subsequent to the approval of this resolution by the mayor, the board of aldermen adopted another resolution rescinding it upon the ground that it had been passed under a misconception of the facts. The rescinding resolution was not approved by the then mayor.

The property on the east side of Fourth avenue between Thirty-second and Thirty-third streets was acquired in behalf of the defendant corporation in 1923. At that time it was practically vacant, the land being covered by a partly dismantled car barn.

Until December 1, 1924, the street known as Park avenue extended in the borough of Manhattan from Thirty-fourth street to the Harlem river. The number " One Park Avenue " had been allotted

to the house of the plaintiff Martha W. Bacon and had been used by her and previous owners for many years.

Adjoining said Martha W. Bacon's home is that of the plaintiff Clara P. Porter, known as No. 3 Park avenue. Opposite thereto, on the westerly side and north of Thirty-fourth street, is the Church of the Messiah and the buildings connected therewith, numbered 2 to 14 Park avenue.

On the easterly side of Fourth avenue, between Thirty-third and Thirty-fourth streets, is the Seventy-first Regiment Armory, the street in front of which has not been widened. The block front below constitutes the premises formerly covered by the New York Railway car barns, now owned by the defendant One Park Avenue Corporation. Thereon there has recently been erected a large commercial structure. This latter block front under the old established numbering would bear the numbers " 461–477 Fourth Avenue." The numbers assigned to the armory block were 479–493 Fourth avenue.

On the westerly side of Fourth avenue, between Thirty-second and Thirty-third streets, was the old Park Avenue Hotel, with the Fourth avenue numbers assigned thereto. The Vanderbilt Hotel, between Thirty-third and Thirty-fourth streets, is also on the westerly side of Fourth avenue.

Prior to the adoption of the resolution to rename the two blocks on Fourth avenue a resolution to widen Fourth avenue between Thirty-second and Thirty-third streets was adopted by the municipal authorities; and the street was thereafter physically widened along its easterly side, between Thirty-second and Thirty-third streets. As a result the easterly curb between those streets was left on the line of the curb line north of Thirty-fourth street, it being the intention of the city eventually to physically widen the easterly side of the avenue between Thirty-third and Thirty-fourth streets so as to place the easterly curb line between those streets back on the same line with the curb north of Thirty-fourth street.

Prior to the date of the decision of the court on December 29, 1926, the defendant Miller had not assigned the number " One Park Avenue " to the property of the defendant One Park Avenue Corporation. After the entry of the judgment appealed from, however, this was done and the plaintiff Martha W. Bacon's number was changed from No. 1 to No. 5, new numbers also being assigned the other houses on both sides of the street between Thirty-fourth and Thirty-fifth streets, while the old numbers on lower Park avenue were assigned to other buildings between Thirty-second and Thirty-fourth streets.

It will be observed, however, that No. 1 is given to a building

covering the entire block, and only three numbers are used for the other block and one-half in order to give the Bacon house No. 5 and to avoid, if possible, the renumbering of the whole street.

The great inconvenience caused by the change of street name and number was fully described in the record and it is unnecessary to repeat the evidence here.

Section 50 of the Greater New York Charter (Laws of 1901, chap. 466), as amended by chapter 592 of the Laws of 1916, provides in part as follows: " Subject to the Constitution and laws of the State, the board of aldermen shall have power * * * to regulate the numbering of houses and lots in the streets and the naming of streets, except that it shall not be lawful to number or renumber any houses or to change the name of any street save between the first day of December in any year and the first day of May next ensuing."

At the time of the passage of the resolution set forth above, section 111 of article 10 of chapter 23 of the Code of Ordinances of the City of New York provided as follows: " In all cases where a street shall have been numbered or renumbered, the borough president having jurisdiction shall thereafter adjust and renumber such streets as the same may be required, from time to time. In numbering and renumbering houses, he shall leave sufficient numbers on each block, so that, under any circumstances, there would be but one block where a change would be required, in case of renumbering at any subsequent time."

A provision of section 383 of the charter (as amd. by Laws of 1921, chap. 170) defining the powers of the borough president states: " * * * He shall have such other powers as are expressly conferred upon him by this act, and such other powers as may be conferred upon him by the board of aldermen. * * * "

In section 40 of the charter it is provided: " Every ordinance or resolution shall, before it takes effect, be presented, duly certified, to the mayor for his approval. * * * If he approve it, he shall sign it. If he disapprove it, he shall specify his objection thereto in writing. If he do not return it with such disapproval within the time above specified, it shall take effect as if he had approved it."

Local authorities are necessarily vested with broad and comprehensive powers and discretion with reference to many matters pertaining to local government, and the renaming and the renumbering of streets is inherently a local matter. A natural advantage of location obtained by reason of ownership of property must often be surrendered for the public good. A benefit inherent in the location of one owner is not to be arbitrarily taken away and

given to another owner because it is coveted by him. Especially is this true where the advantage is not justified by physical or other conditions, but on the contrary is so at variance therewith as to make it obvious that there is a misuse of power and discretion.

Park avenue derives its name from the park spaces along its center line. There are no such spaces below Thirty-fourth street. At the same point, on the sharp incline up to Thirty-fourth street, the street car lines which run along Fourth avenue in front of the property of the defendant One Park Avenue Corporation, go into a tunnel and proceed under Park avenue.

The surface of Park avenue is 12 feet higher than Fourth avenue south of the block from Thirty-third to Thirty-fourth streets. Park avenue is 140 feet wide. The Fourth avenue block between Thirty-third and Thirty-fourth streets is 120 feet wide. In front of the defendant corporation's commercial building, Fourth avenue has been widened, but below this point it is 100 feet wide.

Park avenue immediately north of Thirty-fourth street is residential in character, Thirty-fourth street marking the southern boundary of the district.

After it acquired the block front between Thirty-second and Thirty-third streets, on the easterly side of Fourth avenue, the representatives of the defendant corporation commenced proceedings to appropriate the number " One Park Avenue."

The contention is made that the street between Thirty-second and Thirty-third streets is a wide street. But this condition is a part of the same private plan for individual aggrandizement. It is not mentioned by the defendant corporation that after the property was so acquired, the street was widened in front of this particular block and a most substantial sum awarded to the same interests in the condemnation proceedings.

It is quite evident that the resolution has no purpose or justification other than to allot to the property of the defendant corporation the number " One Park Avenue." While the controversy over the change was pending and the assignment of the new number was held in abeyance, the number " One Park Avenue " was used in advertising the new building.

The authority to act for the public in such matters, conferred by the people upon public officials, who are the servants of the people, carries with it the duty of acting in good faith; and courts of equity may intervene to prevent what is obviously an abuse of power.

A municipal corporation, or the council or board of aldermen by which its powers must necessarily be exercised, stands in a fiduciary relation to the inhabitants of their borough and the owners of

property therein not only as to any public property vested in them in their corporate capacity, but also as to the exercise of the powers conferred upon them by the Legislature. They are invested with those powers only for the general good of their municipality, and no exercise of them for any other purpose can be deemed *bona fide.* It is not necessary that any corrupt motive should influence them in such exercise in order to warrant the interference of the court.

This attempt to arbitrarily take away the house number of one citizen in order to give it to another, is neither for the benefit of the public nor a proper exercise of the police power. No attempt is made to show either necessity or benefit to the community.

If we are to hold that nothing can be done to remedy this condition, then we are rapidly approaching the time when a criticism of public officials or their acts will be met with the response, " What are you going to do about it? "

In *Anderson* v. *Lord Mayor & Corporation of Dublin* (15 L. R. Ir. [1885–1886] 410) there was under consideration a resolution, adopted by the Corporation of Dublin, that the name of Sackville street be changed to O'Connell street, the purpose being to commemorate by this and other intended alterations in street nomenclature, the past historical events of the country and the names of illustrious men.

The subject now here for review was well considered in the opinion written in the above case where the court said:

" * * * but even if the proposed action is literally within the powers of such a body, still, if it is not taken *bona fide* and in the honest discharge of the duties for the purpose of which such powers were conferred, it is, in my opinion, liable to be controlled by this court.

" It may be looked upon in this light, that the grant of every such power carries with it the implied condition that it shall be exercised *bona fide,* and only so far as is necessary for the fair and reasonable performance of the duties with which it is coupled, and that, therefore, any undue exercise of it would be *extra vires.* But whether for this reason or not it cannot be disputed that this court, acting on its ordinary principles, will restrain a public body as well as an individual from an improper exercise of authority. Then what is an improper exercise of authority? If the exercise of it be not required for the objects for which it has been conferred; if it be for the carrying out by means of it of some purpose foreign to the duties with which it is coupled; and if it will unnecessarily inflict injury on the property of individuals, or vexatiously interfere with their personal rights, it cannot be considered a proper or *bona fide* exercise of such authority. Though it may be

ostensibly and literally within the scope of the authority, and in that sense *intra vires,* it may be restrained by this court at the instance of persons who would be prejudicially affected by it. [p. 426.]   *   *   *

" The present case appears to me to lie within the principles which I have stated. The action of the Corporation, which the plaintiffs seek to restrain, is in my opinion arbitrary and capricious, and cannot be considered to be *bona fide.* It has not originated from any movement on the part of the inhabitants of the street, and is, on the contrary, strongly objected to by the great majority of those persons. *It is not pretended that the change would be conducive to either the welfare or convenience of the locality or the borough at large.* The defendants do not venture to allege that it is required for any municipal purpose.   *   *   *   If the proposed exercise of these functions will be productive of material injury to the property in the locality, and of serious inconvenience to the persons immediately connected with it, there is no justification for such action to be found in these sentimental notions.   *   *   *   [p. 427.]

" In the present case it is sufficiently proved that serious injury would arise from the change, and that much confusion would, at least for some time, prevail. The balance of evidence is greatly in favor of the plaintiffs' contention on this subject." (p. 428.)

It is not necessary to prove corruption or bad motives; it is sufficient to show facts such as here disclosed to warrant action by a court of equity.

The extreme case here presented is best illustrated by showing the extent of the change and the method used to accomplish it. Two blocks now have but four numbers although before the change one block had Nos. 461 to 477 and the other block had Nos. 479 to 493. The street known as Park avenue instead of properly commencing at a natural starting point, Thirty-fourth street, now commences at Thirty-second street, when it might just as well start at Twenty-eighth, Thirtieth or any other street. The slight additional width is hardly noticeable and surely is no excuse for making such a radical change and resorting to such a method to do so.

The judgment so far as it is in favor of the defendants should be reversed, with costs, and judgment entered as prayed for by the plaintiffs, with costs.

FINCH, MCAVOY and O'MALLEY, JJ., concur; DOWLING, P. J., dissents.

Judgment so far as it is in favor of the defendants reversed, with costs, and judgment entered as prayed for by the plaintiffs, with costs. Settle order on notice.